FILED
2012 Jul-20  AM 09:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

KELLI ALTA-RUTH OLIVER,          )
     Plaintiff,              )
                             )
     vs.                     )          4:11-CV-02643-LSC
                             )
MICHAEL J. ASTRUE,               )
Commissioner of Social Security, )
     Defendant.              )

MEMORANDUM OF OPINION

I.      Introduction

The plaintiff, Kelli Alta-Ruth Oliver, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI").  Ms. Oliver timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Oliver was thirty-five years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has a high school education, as well as one completed year at a business college.  (Tr. at 30.)  Her past work experiences include employment as a phlebotomist, cashier, and receptionist.  (*Id*. at 24.)  Ms. Oliver claims that she became disabled on September 26, 2006 (amended from an original

claim of July 1, 2005), due to low back pain, bipolar disorder, and anxiety.  (*Id*. at 18–19.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process.  *See* 20 C.F.R. § 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The first step requires a determination of whether the claimant is "doing substantial gainful activity."  20 C.F.R. § 416.920(a)(4)(i).  If he or she is, the claimant is not disabled and the evaluation stops.  20 C.F.R. § 416.920(b).  If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined.  20 C.F.R. § 416.920(a)(4)(ii).  These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled.  *Id*.; 20 C.F.R. § 416.909.  The decision depends on the medical evidence in the record.  *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971).  If the claimant's impairments are not severe, the analysis stops.  20 C.F.R. §§ 416.920(a)(4)(ii), 416.920(c).  Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P, Appendix 1.  20 C.F.R. § 416.920(a)(4)(iii).  If the claimant's impairments fall within this category, he or she will be found disabled

without further consideration. *Id.* If they do not, a determination of the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. § 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. § 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.*

The ALJ determined that Ms. Oliver has not engaged in substantial gainful activity since the alleged onset of her disability. (Tr. at 18.) According to the ALJ, Plaintiff's lumbago, degenerative disc disease of the lumbar spine, status post-laminectomy at L4/5 and cerebrospinal fluid leak repair, obesity, and bipolar disorder are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, he found that these impairments neither meet nor medically equal any of

the listed impairments in Appendix 1, Subpart P, Regulations No. 4. (*Id.* at 19.)  The

ALJ did not find Ms. Oliver's allegations to be totally credible, and he determined that

she has the following residual functional capacity:

> [U]nskilled work at the light exertional level as defined in
> 20 CFR 416.967(b) with no standing/walking more than a
> total of 2 hours during an 8 hour workday; no climbing
> ladders, ropes, scaffolds; occasional postural limitations; no
> exposure to hazards such as machinery, heights, etc; no
> concentrated exposure to extremes of heat, cold, wetness,
> humidity; with the need for a sit/stand option and to
> alternate positions at one hour intervals; and, no constant
> interaction with the public or co-workers; performing
> unskilled work that can be learned within thirty days with
> few workplace changes.

(*Id.* at 20–21.)

According to the ALJ, Ms. Oliver is unable to perform any of her past relevant

work, she is a "younger individual," and she has at least a high school education, as

those terms are defined by the regulations.  (*Id.* at 23–24.)  He determined that

"[t]ransferability of job skills is not material to the determination of disability" in this

case. (*Id.* at 24.)  The ALJ found that Ms. Oliver has the residual functional capacity

to perform a significant range of light work.  (*Id.*)  Even though Plaintiff cannot

perform the full range of light work, the ALJ used Medical-Vocation Rule 202.21 as

a guideline for finding that there are a significant number of jobs in the national

economy that she is capable of performing, such as nut sorter, products inspector, and surveillance system monitor. (*Id.* at 24–25.) The ALJ concluded his findings by stating that Plaintiff "has not been under a disability, as defined in the Social Security Act, since June 26, 2007, the date the application was filed." (*Id.* at 25.)

II.     Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir.

1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence.  *Miles*, 84 F.3d at 1400.  No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached."  *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987).  Moreover, failure to apply the correct legal standards is grounds for reversal.  *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.    Discussion

Ms. Oliver alleges that the ALJ's decision should be reversed and remanded for one reason.  Specifically, she believes that the ALJ failed to provide good cause for rejecting two physicians' opinions.  (Doc. 8 at 10.) Plaintiff first argues that the ALJ erred in not giving her treating physician's opinion considerable weight and second argues that the ALJ improperly ignored a second physician's opinion.

A treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary."  *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125

F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted).  The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source.  *See* 20 C.F.R. § 416.927(d).  Furthermore, "good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (*citing Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583–84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

The Court must also be aware of the fact that opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are

dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. § 416.927(e). The Court is interested in the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's residual functional capacity. *See, e.g.,* 20 C.F.R. § 404.1546(c).

Dr. Nelson was the plaintiff's treating physician and saw Plaintiff consistently from at least 2002. (Tr. at 271.) Plaintiff argues that the ALJ erred by failing "to specify what weight is given to the treating physician's opinion or the reasons for giving it no weight." (Doc. 8 at 8.) Specifically, the plaintiff takes issue with the ALJ's failure to adopt Dr. Nelson and his nurse practitioner's findings in a 2009 Social Security disability questionnaire. (*Id.*) Plaintiff also takes issue with the ALJ's decision not to adopt the findings in a letter written to Dr. Nelson in March of 2005 by another physician, which stated that the plaintiff was complaining of pain and that the physician might have to refer the plaintiff to a chronic pain clinic if the plaintiff did not feel better. (*Id.* at 10–11.)

## A.    Dr. Nelson's Assessment

In his opinion, the ALJ first acknowledged that Dr. Nelson and the nurse practitioner coauthored their 2009 evaluation of the plaintiff. (*Id.*) According to the ALJ, the preprinted form opines that the plaintiff would miss twenty-five to thirty days of work due to debilitating pain and emotional issues. (*Id.*) In making his determination, the ALJ looked at the plaintiff's global assessment of functioning ("GAF") scores, her ability to care for a total of four children, her past work history, and "the other evidence before" him and determined that Dr. Nelson's 2009 opinion was "not entitled to considerable weight." (Tr. at 23.) The ALJ had good cause to give Dr. Nelson's assessment little weight because the evidence supported a contrary finding, the opinion was inconsistent with the doctor's own medical records, and the opinion was not bolstered by the evidence.

The plaintiff's medical records as a whole support a contrary finding to that found in Dr. Nelson's 2009 assessment. *See Phillips*, 357 F.3d at 1241; *Edwards*, 937 F.2d at 583–84.  Instead of the severe mental problems described in the 2009 evaluation, the ALJ notes that the plaintiff's GAF scores only indicate a moderate level of mental health debility. (*Id.*) Furthermore, Plaintiff's mental health problems have not required inpatient treatment, despite the treating physician's severe

diagnosis. (*Id.*) Finally, the ALJ examined the plaintiff's past work record and the evaluation of various state consultants. (*Id.*) The ALJ opined that the work record indicated that Plaintiff's history of unemployment might be caused by something other than disabilities, and one state consultant concluded that the mental impairments were not severe. (*Id.*) The second group of state examiners evaluated the plaintiff's impairments, and the ALJ found that the evidence "justif[ies] a conclusion that the claimant's non-exertional impairments are somewhat more limiting than was concluded by the state examiners while the exertional impairments are only slightly differently limited than they concluded." (*Id.*)

Good cause also exists to reject Dr. Nelson's evaluation because it was inconsistent with his own records. As the Commissioner observes, the plaintiff entered Dr. Nelson's clinic on September 15, 2006, after having cleaned out her garage for several days. (*Id.* at 248.) Four days prior, on September 11, 2006, the plaintiff entered the clinic after having tripped while moving boxes in her garage. (*Id.* at 249.) On May 24, 2006, the plaintiff complained of pain after moving heavy objects at her yard sale. (*Id.* at 254.) Finally, only a few weeks prior to the plaintiff's first claim of being disabled, the plaintiff was apparently set to travel to Walt Disney World for a vacation. (*Id.* at 257.) Based on this evidence contained within the clinic's records,

the ALJ had substantial evidence for deciding that the physician's opinion was contradicted and inconsistent.

Finally, Dr. Nelson's opinion was not bolstered by the other evidence in the record. *See Phillips*, 357 F.3d at 1241; *Edwards*, 937 F.2d at 583–84. Specifically, the plaintiff's daily activities fail to bolster the opinion. *See* 20 C.F.R. § 416.929(c)(3) (allowing courts to evaluate a plaintiff's daily activities). In this case, the ALJ noted that the plaintiff takes care of three other children in addition to her own child. (Tr. at 23.) Despite the additional effort required by this childcare, the plaintiff argues that the ALJ should not have considered the activities in making his assessment. (Doc. 8 at 9.) According to the plaintiff's argument, "[t]he ALJ cannot reject the severity of subjective complaintis [*sic*] because the claimant married and raised children." (*Id.*) However, the ALJ did not reject the subjective complaints on this basis. Rather, the ALJ focused on the plaintiff's daily activities beyond caring for her own child.

## B.    Dr. Strong's Letter

The plaintiff next argues that the ALJ "arbitrarily chose to ignore uncontroverted medical testimony" and was "substituting his own opinion for that of the treating physician." (*Id.* at 11–12.) Plaintiff argues that the ALJ improperly

rejected uncontested medical information when he rejected a letter from a second physician.

On March 5, 2008, Dr. Strong, a neurologist, sent a letter to the plaintiff's treating physician. (*Id.* at 555–56.) Dr. Strong stated that he met with the plaintiff "in follow-up in the Neurology Clinic at Trinity Medical Center." (*Id.* at 555.) After describing the plaintiff's case, Dr. Strong posited that he might "need to get [the plaintiff] to a chronic pain clinic if [he couldn't] get her feeling better." (*Id.* at 556.) Apart from the fact that the letter describes only a brief, four month period of observation, the letter also does not express an opinion from the plaintiff's treating physician. Instead, the letter came from a physician who seemingly evaluated the plaintiff during a short period of time. (*Id.* at 555.) Also, the letter only reiterated the plaintiff's own subjective evaluation of her pain. (*Id.*) When describing the plaintiff's medical test results, the doctor merely stated that he was "not sure what to make of [them]." (*Id.*)

The plaintiff argues that the ALJ improperly rejected this "uncontroverted medical evidence" when making his evaluation, but this argument fails for multiple reasons. First, the ALJ incorporated the plaintiff's subjective pain symptoms into his evaluation. Specifically, the ALJ accounted for the plaintiff's pain when finding her

residual functional capacity, even stating that "these [pain] symptoms are credible only to the extent they are consistent with the residual functional capacity assessment that I have made." (*Id.* at 22.) Thus, the ALJ did not choose to "ignore" the treating physician's opinion and other evidence, but rather incorporated the evidence into his final assessment. Second, the "uncontroverted" medical evidence provided by the plaintiff is inadequate. Dr. Strong only met with the plaintiff for a brief time before writing his letter. Furthermore, the letter did not present any concrete medical opinions apart from a secondary observation of the plaintiff's subjective pain symptoms. Finally, simply discussing what the doctor might have to do in the future is not equivalent to an evaluation of the patient's pain. Therefore, because the provided medical evidence was neither ignored nor especially probative of the plaintiff's pain symptoms, the plaintiff's argument fails.     For these reasons, the ALJ had good cause to disregard Dr. Nelson's July 2009 and Dr. Strong's 2005 assessment of Plaintiff's condition. *See Crawford*, 363 F.3d at 1159–60; *Phillips*, 357 F.3d at 1240–41.

IV. Conclusion

Upon review of the administrative record, and considering all of Ms. Oliver's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law.  A separate order will be entered.

Done this 20th day of July 2012.

L. Scott Coogler
United States District Judge
167458